## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PAULINE RODOCK,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-2050-DDC** |
| **PATRICK B. MOORE, D.D.S., M.D., AND LEGENDS DENTAL GROUP, P.A.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Pauline Rodock was a dental patient of defendants Dr. Patrick D. Moore and Legends Dental Group, P.A.  During a dental procedure performed on February 2, 2019, plaintiff alleges that a dental staff member touched her breast without her consent.  Also, she alleges that Dr. Moore and his staff made rude remarks about her appearance and clothing and that they poured, toasted, and drank glasses of scotch in her presence.  Plaintiff brings this diversity action asserting three claims under Kansas law:  (1) medical malpractice, (2) loss of consortium, and (3) intentional inflection of emotional distress.  Doc. 93 at 11 (Pretrial Order ¶ 4.a.).

Defendants have filed a Motion for Summary Judgment.  Doc. 94.  Plaintiff has filed an Opposition.  Doc. 96.  And defendants have filed a Reply.  Doc. 97.  For reasons explained below, the court grants defendants' Motion for Summary Judgment.

## I.      Uncontroverted Facts[1]

The following facts either are stipulated in the Pretrial Order (Doc. 93), uncontroverted, or where genuinely controverted, viewed in the light most favorable to plaintiff—the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

On February 2, 2019, plaintiff Pauline Rodock underwent an extraction and dental implant surgery at Legends Dental Group, P.A.  Doc. 93 at 2 (Pretrial Order ¶ 2.a.i.).  The surgical procedure included "extraction of tooth #4 with implant and bone graft, and extraction of teeth #18 and 31 under sedation." *Id.*  Defendant Patrick B. Moore, D.D.S., M.D., performed the procedure. *Id.*

Plaintiff testified that, during the dental procedure, one of the dental practice's staff members touched her breast without her consent. Doc. 96 at 19, 39 (Rodock Dep. 86:11–86:21,

---

[1]      Defendants' Memorandum in Support of the Motion for Summary Judgment sets forth 36 Statements of Unconverted Material Facts.  Doc. 95 at 3–9.  Each one complies with D. Kan. Rule 56.1(a) because they are "numbered and . . . refer with particularly to those portions of the record upon which the movant relies."  D. Kan. Rule 56.1(a).  Our court's local rules also provide that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id.*  To controvert facts in the fashion the rule requires, the nonmoving party must number the facts and "refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed."  D. Kan. Rule 56.1(b)(1).  Here, plaintiff has failed to controvert the facts asserted by defendants' Memorandum in Support. *See generally* Doc. 96.  As a consequence, the court deems defendants' facts admitted and accepts them as true consistent with D. Kan. Rule 56.1(a).

Our local rules also permit the non-moving party on summary judgment to rely "on any facts not contained in the movant's brief" by "set[ting] forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a)" of the Rule. D. Kan. Rule 56.1(b)(2).  Plaintiff has invoked this provision, listing six statements of "contr[o]verted material facts."  Doc. 96 at 1–2.  Where supported by record evidence, the court has incorporated plaintiff's facts into the uncontroverted facts recited above.  However, the court does not include other facts that plaintiff has recited in the Arguments and Authorities section of her brief, *see id.* at 3–10, because plaintiff hasn't complied with our local rule governing summary judgment, *see Stonebarger v. Union Pac. R.R. Co.*, 76 F. Supp. 3d 1228, 1236 (D. Kan. 2015) (explaining that under "D. Kan. Rule 56.1(b)(2), the Court considers only those facts that the parties include in their statement of facts, in numbered paragraphs with proper record citation and support" and "does not consider facts that the parties discuss only in the argument section of their briefs and not in the statement of facts").

140:1–19).  Plaintiff testified that just this one person—a female staff member—touched her breast.  Doc. 95-7 at 7 (Rodock Dep. 86:19–21).  Also, plaintiff testified that Dr. Moore and his staff said "mean things" about her, including commenting on her appearance and clothing and questioning whether she had undergone cosmetic surgery.  Doc. 96 at 26–30 (Rodock Dep. 98:1– 102:4).  Plaintiff testified that while she was still in the procedure room and recovering from sedation, Dr. Moore poured Scotch into glasses for himself and staff members, they toasted their drinks, and drank the Scotch in plaintiff's presence.  *Id.* at 35–38 (Rodock Dep. 131:14–134:25).

Plaintiff testified that she had made an audio recording of her dental procedure.  *Id.* at 40–41, 43–44 (Rodock Dep. 146:9–147:24, 166:1–167:14).  According to plaintiff, Dr. Moore told her to delete the audio recording and that he "scared" her.  *Id.*

Plaintiff and her husband filed this lawsuit on January 29, 2021.  Doc. 1 (Compl.).  Later, the court dismissed plaintiff's husband from the lawsuit because he hadn't asserted any claims in the Pretrial Order.  Doc. 93 at 1 n.1 (Pretrial Order).  During discovery, plaintiff asserted that her lawsuit alleged the following causes of action:  "medical malpractice, battery, assault, intentional infliction of emotional distress, and loss of consortium, or loss of love and society and defamation of character."  Doc. 95-2 at 1 (Pl.'s Am. Answer to Def.'s First Interrog.).  Plaintiff later abandoned her assault, battery, and defamation claims.  *See* Doc. 93 at 11 (Pretrial Order ¶ 4.a.).  Plaintiff's remaining claims allege:  (1) medical malpractice, (2) loss of consortium, and (3) intentional infliction of emotional distress.  *Id.*

Plaintiff asserts in the Pretrial Order that she bases her medical malpractice claim on "'the thing should speak for itself' as the standard of care expected in this medical event" because, she asserts, "these medical professionals [should have] perform[ed] the procedure without rude and insulting nonconsensual touching, instilling fear of bodily harm, making false

statements and drinking alcoholic beverages." *Id.* (Pretrial Order ¶ 4.a.1.).  Neither the Complaint nor her interrogatory response disclosed that she was basing her medical malpractice claim on "the thing should speak for itself" theory of liability.  *See* Doc. 1 (Compl.); *see also* Doc. 95-2 at 1 (Pl.'s Am. Answer to Def.'s First Interrog.).  As a result, defendants object in the Pretrial Order to plaintiff's medical malpractice claim "based on the theory of 'Res Ipsa Loquitur' because [p]laintiff has not pleaded a claim on this theory and [d]efendants did not conduct discovery on this theory of [p]laintiff's claim[,]" and "[d]efendants would be prejudiced if [p]laintiff is allowed to proceed on this new theory" because "[d]iscovery is now closed[.]" Doc. 93 at 12 (Pretrial Order ¶ 4.b.3.).

Plaintiff's expert witness, G. Rawleigh Fisher, D.D.S., M.D., testified that he doesn't have any standard of care opinions against Legends Dental Group, P.A.  Doc. 95-8 at 3–4 (Fisher Dep. 23:22–24:6).  Also, Dr. Fisher testified that—in his opinion—plaintiff alleges no medical malpractice in this case.  *Id.* at 2 (Fisher Dep. 17:17–21).

Plaintiff hasn't sought any mental health treatment for the events that she alleges occurred on February 2, 2019.  Doc. 95-7 at 3 (Rodock Dep. 31:10–12).  She currently doesn't see a psychiatrist, psychologist, therapist, counselor, or any other mental healthcare provider.  *Id.* at 2 (Rodock Dep. 2:13–19).  Plaintiff testified that the events of February 2, 2019 "rise to the level of needing" mental health treatment "[o]nly when [she has] to face it."  *Id.* at 3 (Rodock Dep. 31:6–9).  Plaintiff testified that she has to "face it" when she has to discuss matters related to this lawsuit with her attorney.  *Id.* (Rodock Dep. 31:13–22).

## II.    Summary Judgment Standard

The standard for deciding summary judgment under Federal Rule of Civil Procedure 56 is well-known.  Summary judgment is appropriate if the moving party demonstrates that "no

genuine dispute" exists about "any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And, an issue of fact is "material" if it has the ability to "affect the outcome of the suit under the governing law[.]" *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion[.]" *Celotex*, 477 U.S. at 323. A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party satisfies its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted). To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation and internal quotation marks omitted). When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Summary judgment is not a "disfavored procedural shortcut[.]" *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.     Summary Judgment Analysis

Defendants assert several arguments supporting their Motion for Summary Judgment. The court addresses four of them below.  Because the court holds that defendants deserve summary judgment against plaintiff's claims for at least three of the four reasons asserted by defendants, it need not address defendants' other summary judgment arguments.

### A.  Intentional Infliction of Emotions Distress Claim

Defendants assert two arguments for summary judgment against plaintiff's intentional infliction of emotional distress claim.  Defendants argue:  (1) the statute of limitations bars plaintiff's intentional infliction of emotional distress claim, and (2) even if timely, plaintiff has failed to come forward with summary judgment facts presenting a triable issue on her intentional infliction of emotional distress claim.  The court addresses each of the two summary judgment arguments, in turn, below.

### 1.     Defendants Haven't Shown that the Statute of Limitations Bars Plaintiff's Intentional Infliction of Emotional Distress Claim as a Matter of Law.

The Kansas Supreme Court has held that the statute of limitations governing intentional infliction of emotional distress claims is two years.  *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 97 P.3d 492, 497 (Kan. 2004).  But defendants assert that a shorter limitations period applies here.  Specifically, defendants argue that the one-year statute of limitations governing plaintiff's abandoned claims for battery, assault, and defamation also applies to bar plaintiff's intentional infliction of emotional distress claim because plaintiff premises her intentional infliction of emotional distress claim on the same alleged acts giving rise to time-barred claims for battery, assault, and defamation.

Plaintiff's claims accrued on February 2, 2019, when plaintiff underwent the dental procedure at Legends Dental Group, P.A.  Initially, plaintiff asserted battery, assault, and defamation claims against defendants for the acts that allegedly occurred on February 2, 2019. Doc. 95-2 at 1 (Pl.'s Am. Answer to Def.'s First Interrog.).  In Kansas, battery, assault, and defamation claims are governed by a one-year statute of limitations.  Kan. Stat. Ann. § 60-514(a)–(b).  Plaintiff filed her lawsuit on January 29, 2021 (Doc. 1), more than a year after her February 2, 2019 dental procedure.  Thus, defendants argue, the statute of limitations bars plaintiff's now-abandoned battery, assault, and defamation claims.  And, defendants assert, the same one-year limitations period governs plaintiff's intentional infliction of emotional distress claim because it is grounded on the same facts that give rise to the battery, assault, and defamation claims.  Doc. 95 at 12–14.

To support this argument, defendants cite an unpublished Kansas Court of Appeals opinion which held that "[p]laintiffs are not permitted to couch their claims in different terms in order to evade a statute of limitations."  *Est. of Doty ex rel. Doty v. Dorsch*, 449 P.3d 1223, 2019 WL 5090387, at *17 (Kan. Ct. App. Oct. 11, 2019) (unpublished table opinion) (citations omitted).  In *Estate of Doty*, plaintiff premised an intentional infliction of emotional distress claim on an alleged sexual assault.  The Kansas Court of Appeals affirmed the district court's decision granting summary judgment against the intentional infliction of emotional distress claims for reasons that don't apply here.  *Id.* at *16–17.  And then, after concluding that summary judgment was proper, the Court of Appeals noted "[a]dditionally, sexual assault has a one-year statute of limitation."  *Id.* at *17 (citing Kan. Stat. Ann. § 60-514).  The Kansas Court of Appeals explained that "[p]laintiffs are not permitted to couch their claims in different terms in order to evade a statute of limitations[,]" but that was "precisely what [plaintiff was]

7

attempting to do here." *Id.* (first citing *Martinmaas v. Engelmann*, 612 N.W.2d 600, 614 (S.D. 2000) (Konenkamp, J., concurring); then citing *Dawson v. Prager*, 76 P.3d 1036, 1045 (Kan. 2003)).  Thus, the Kansas Court of Appeals, recognizing that "the district court did not dismiss [plaintiff's] intentional infliction of emotion[al] distress claim on statute of limitations grounds," nevertheless found "it would have been proper to do so." *Id.*

Defendants urge the court to apply *Estate of Doty*'s holding to the facts here.  The court is reluctant to do so.  *Estate of Doty* is an unpublished Kansas Court of Appeals opinion.  The court has found no other Kansas case that has applied its alternative statute of limitations holding to bar a claim on limitations grounds because the claim arises from the same facts as other, time-barred claims.  Also, to reach its holding on the statute of limitations, *Estate of Doty* relies on two cases:  (1) a concurring opinion from a South Dakota case, and (2) *Dawson v Prager*, a case rejecting a contract claim premised on a failure to maintain the standard of care (*i.e.*, a medical malpractice claim) but never discussing any statute of limitations issues.  Neither of the two cases that *Estate of Doty* cites persuades the court that it should shorten the statute of limitations period governing plaintiff's intentional infliction of emotional distress claim.  But, in the end, the court need not decide this issue.  As explained below, even if plaintiff has asserted the claim in a timely fashion, the summary judgment facts present no genuine issue whether defendants are liable for an intentional infliction of emotional distress claim under Kansas law.

> **2.    The Uncontroverted Facts Present No Triable Issue on Plaintiff's Intentional Infliction of Emotional Distress Claim.**

Even if not time-barred, plaintiff has failed to come forward with summary judgment facts presenting a jury question whether defendants are liable for intentional infliction of emotional distress.  "Kansas has set a very high standard for the common law tort of intentional infliction of emotional distress or, as it is sometimes referred to, the tort of outrage."  *P.S. ex rel.*

*Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1304 (D. Kan. 2009) (citation and internal quotation marks omitted); *see also McCall v. Bd. of Comm'rs of Cnty. of Shawnee*, 291 F. Supp. 2d 1216, 1229 (D. Kan. 2003) ("Claims of outrage in Kansas are reserved for the most egregious circumstances.").  In Kansas, intentional infliction of emotional distress requires the following four elements:

> (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe.

*Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010) (citing *Taiwo v. Vu*, 822 P.2d 1024, 1029 (Kan. 1991)).

Defendants assert that the summary judgment evidence—even when viewed in plaintiff's favor—presents no triable issue on the fourth element because no reasonable jury could conclude that plaintiff sustained extreme and severe mental distress.  The court agrees.

The fourth element of an intentional infliction claim requires emotional distress that "is sufficiently severe, genuine and extreme that no reasonable person should be expected to endure it."  *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981).  Although "[e]motional distress passes under various names such as mental suffering, mental anguish, nervous shock, and includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, embarrassment, anger, chagrin, disappointment, and worry[,] . . . it is only when emotional distress is extreme that possible liability arises."  *Id.* at 1180.  "The extreme distress required must be reasonable and justified under the circumstances, and there can be no liability where the plaintiff has appeared to suffer exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor had knowledge."  *Id.* (citations omitted).  "The

emotional distress must in fact exist, and it must be severe." *Id.* (citation omitted).  Also, the "absence of psychiatric or medical treatment, including medication, weighs against a finding of extreme emotional distress." *Valadez*, 229 P.3d at 395.

Here, the summary judgment record contains no evidence presenting a triable issue whether plaintiff has sustained extreme and severe mental distress.  Plaintiff testified that she hasn't sought *any* mental health treatment as a result of the events of February 2, 2019.  She doesn't see a psychiatrist, psychologist, therapist, counselor, or any other mental healthcare provider.  Also, plaintiff testified that the events of February 2, 2019, "rise to the level of needing" mental health treatment "[o]nly when [she has] to face it."  Doc. 95-7 at 3 (Rodock Dep. 31:6–9).  And, plaintiff testified, she has to "face it" only when she discusses this lawsuit with her attorney—a lawsuit she filed of her own volition.  *Id.* (Rodock Dep. 31:13–22).  But the summary judgment facts include no evidence that plaintiff has received any psychiatric or medical treatment, or that she has taken medication for emotional distress based on events that allegedly occurred during (or after) her dental procedure on February 2, 2019.

These facts simply will not permit a reasonable jury to conclude that plaintiff has sustained the kind of extreme and severe mental distress essential to an intentional infliction of emotional distress claim.  *See Valadez*, 229 P.3d at 395 (holding no extreme and severe mental distress existed, although plaintiff felt physically ill, afraid, and cried, because the record showed no long-lasting effects or medical treatment or psychological counseling resulting from defendants' alleged outrageous conduct); *see also Roberts*, 637 P.2d at 1181 (affirming summary judgment and concluding no extreme and severe distress when plaintiff expressed fright, embarrassment, and worry because "[t]he emotional distress suffered by her was resentment and upset which normally results from acts and criticism which are inconsiderate and unkind" but

does not constitute an actionable outrage claim); *Dana v. Heartland Mgmt. Co.*, 301 P.3d 772, 781 (Kan. Ct. App. 2013) (affirming summary judgment and holding that plaintiff's allegations of chest pain, discomfort, crying, and increased heart and sleep medications did not rise to the level of extreme or severe distress).

Plaintiff's Opposition does little to defend defendants' summary judgment arguments on the intentional infliction claim. Plaintiff utterly fails to come forward with any summary judgment facts supporting a triable issue of extreme and severe mental distress. Instead, in conclusory fashion, she asserts: "It also is apparent to the average laym[a]n that plaintiff's allegations, when proven, are extreme and outrageous conduct which caused [plaintiff] to suffer extreme and severe emotional distress." Doc. 96 at 8. This conclusory, *ipse dixit*, assertion doesn't suffice to shoulder plaintiff's summary judgment burden to set forth a genuine issue for a trial on her intentional infliction of emotional distress claim. *See Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (explaining that, on summary judgment, "'[i]f the movant carries [its] initial burden'" to show an absence of evidence to support the non-moving party's claims, then the non-moving party "'must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which [she] carries the burden of proof'" (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996))).

The undisputed facts—even when viewed in plaintiff's favor—present no triable issue whether plaintiff sustained extreme and severe emotional distress because of the events of February 2, 2019. The court thus grants summary judgment against plaintiff's intentional infliction of emotional distress claim.

## B.  Medical Malpractice Claim

Next, defendants argue that they deserve summary judgment against plaintiff's medical malpractice claim for two reasons.  Specifically, defendants assert:  (1) plaintiff's medical malpractice claim fails as a matter of law because plaintiff has hasn't secured an expert opinion that defendants breached the standard of care or caused plaintiff to sustain damage; and (2) plaintiff cannot assert a medical malpractice claim based on a *res ipsa loquitor* theory because she never asserted this theory until she included it in the Pretrial Order.  The court addresses each argument, separately, below.

### 1.    Plaintiff's Medical Malpractice Claim Fails Without Expert Opinion.

Defendants argue that plaintiff's medical malpractice claim fails as a matter of law in Kansas because she doesn't have an expert opinion addressing the standard of care.  In Kansas, claims premised on a medical malpractice theory require a plaintiff to prove:

> (1) The health care provider owed the patient a duty of care and was required to meet or exceed a certain standard of care to protect the patient from injury; (2) the provider breached this duty or deviated from the applicable standard of care; (3) the patient was injured; and (4) the injury proximately resulted from the breach of the standard of care.

*Drouhard-Nordhus v. Rosenquist*, 345 P.3d 281, 286 (Kan. 2015) (citation omitted).

"The plaintiff in a medical malpractice case bears the burden of showing not only the doctor's negligence, but that the negligence caused the injury."  *Hare v. Wendler*, 949 P.2d 1141, 1146 (Kan. 1997) (internal citations and quotation marks omitted).  "Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, *expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation*."  *Id.* (emphasis added) (internal citations and quotation marks omitted); *see also Chandler v. Neosho Mem'l Hosp.*, 574 P.2d 136,

139 (Kan. 1977) ("The standard of medical and hospital care which is to be applied in each case is not a rule of law, but a matter to be established by the testimony of competent medical experts."); *Watkins v. McAllister*, 59 P.3d 1021, 1023 (Kan. Ct. App. 2002) ("Expert testimony is required in medical malpractice cases to establish the applicable standard of care and to prove causation." (citation omitted)).

Here, plaintiff's expert witness, G. Rawleigh Fisher, D.D.S., M.D., testified that he doesn't have any standard of care opinions against Legends Dental Group, P.A. Doc. 95-8 at 3–4 (Fisher Dep. 23:22–24:6). Also, Dr. Fisher testified that—in his opinion—no medical malpractice is alleged in this case. *Id.* at 2 (Fisher Dep. 17:17–21). Defendants assert that plaintiff has no "expert who will provide opinion testimony that the [d]efendants deviated from the standard of care or that a deviation from the standard of care caused [plaintiff's] alleged injury and damages as required under Kansas [l]aw." Doc. 95 at 16–17. Plaintiff's Opposition doesn't appear to refute this argument. *See* Doc. 96 at 6 ("Dr. Fisher's opinion is that no expert opinion is necessary to conclude that the professional medical defendants had a legal duty to the plaintiff to treat her and perform the necessary procedure without engaging in the actions asserted by the plaintiff."). Instead, plaintiff asserts that it's "apparent to the average layman from common knowledge or experience that an oral surgeon or any member of his team should not engage in inappropriately touching a patient without the patient's consent, cause the patient fear of bodily harm, make disparaging remarks about their appearance, or consume alcohol in the treatment room during the procedure." *Id.* at 8. The court discusses plaintiff's *res ipsa loquitor* theory, below. But, on this summary judgment argument, plaintiff concedes that she has no expert opinion to support her medical malpractice claim. Thus, plaintiff's medical malpractice claim fails as a matter of law to the extent that it requires expert opinion.

> **2.    Plaintiff's Cannot Rely on a *Res Ipsa Loquitor* Theory to Avoid Summary Judgment Against Her Medical Malpractice Claim.**

Plaintiff tries to avoid summary judgment against her medical malpractice claim by arguing that an exception to Kansas's expert opinion requirement applies here.  Indeed, Kansas recognizes such an "exception to [the expert opinion] requirement" that "arises in cases where the lack of reasonable care or the existence of causation is apparent to the average layman from common knowledge or experience."  *Watkins*, 59 P.3d at 1023 (citing *Hare*, 949 P.2d at 1146–47).  As already noted, plaintiff asserts that it's "apparent to the average layman from common knowledge or experience that an oral surgeon or any member of his team should not engage in" the conduct alleged here.  Doc. 96 at 8; *see also id.* at 4 (asserting that defendants' "actions are obvious medical malpractice without expert opinion").  The court disagrees with plaintiff's position for a couple of reasons.

*First*, until the Pretrial Order, plaintiff never asserted that her claims rely on the common knowledge exception.  Plaintiff never had disclosed in either her Complaint or her interrogatory responses that she was basing her medical malpractice claim on a *res ipsa loquitor* theory.  *See* Doc. 1 (Compl.); *see also* Doc. 95-2 at 1 (Pl.'s Am. Answer to Def.'s First Interrog.).  As a result, defendant has objected to plaintiff's medical malpractice claim "based on the theory of 'Res Ipsa Loquitur' because [p]laintiff has not pleaded a claim on this theory and [d]efendants did not conduct discovery on this theory of [p]laintiff's claim[,]" and "[d]efendants would be prejudiced if [p]laintiff is allowed to proceed on this new theory" because "[d]iscovery is now closed[.]"  Doc. 93 at 12 (Pretrial Order ¶ 4.b.3.).

Plaintiff's Opposition makes the conclusory assertion that her "theory of the case, the allegations that defendants' actions constituted obvious medical malpractice, *per se*" have

"remain[ed] the same" throughout the case from "the first interaction between counsel" to other stages of discovery. Doc. 96 at 4. But she cites nothing but her Rule 26(a)(1) initial disclosures to support this assertion. *Id.* (citing Doc. 95-4). And nowhere in those disclosures did plaintiff identify that she premised her medical malpractice claim on a *res ipsa loquitor* theory. *See generally* Doc. 95-4. Thus, plaintiff arguably has waived this theory of proving her Kansas medical malpractice claim by waiting to assert the theory until the Pretrial Order. *See Cessna Aircraft Co. v. Hartford Accident & Indem. Co.*, 900 F. Supp. 1489, 1506 (D. Kan. 1995) (striking plaintiff's theory from the Pretrial Order because "plaintiff did not inform the moving defendants until the pretrial order was entered, after the close of discovery, that it intended to allege" the theory and holding that defendants would sustain "substantial[ ] prejudice[ ] if the court refused to strike the requisite paragraphs of the pretrial order in that substantial discovery would be necessary to respond appropriately to the theory with only a short time remaining before trial").

*Second*, even if plaintiff hasn't waived the common knowledge theory, it won't (and can't) fit the facts here. The common knowledge exception is a "narrow exception and has rarely been applied." *Hubbard v. Mellion*, 302 P.3d 1084, 1093 (Kan. Ct. App. 2013) (citation omitted); *see also Munoz v. Clark*, 199 P.3d 1283, 1288 (Kan. Ct. App. 2009) ("[T]he application of the common knowledge exception is extremely limited."). The exception applies only when "the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally." *Hubbard*, 302 P.3d at 1093 (citation omitted). The common knowledge exception has "three essential elements":

> (1) the plaintiff has asserted a claim of medical malpractice; (2) the care or result of the care is patently bad; and (3) a person without the pertinent

> medical knowledge can assess the wrongfulness of the diagnosis, treatment, or care and attribute the plaintiff's injury to the wrongful conduct without the assistance of expert testimony.

*Id.* "Whether or not the common knowledge exception applies to a given set of facts is a question of law." *Id.* The Kansas courts have applied the common knowledge exception in limited circumstances, like the "case of a surgeon operating on the wrong limb, or a case where a patient is dropped from a table." *Munoz*, 199 P.3d at 1289 (citing *Perkins v. Susan B. Allen Mem'l Hosp.*, 146 P.3d 1102, 1106 (Kan. Ct. App. 2006)).

Here, plaintiff cites no cases to argue that the Kansas courts would apply the common knowledge exception on the facts here. *See generally* Doc. 96. Defendants respond that all of the cases where Kansas courts have applied the exception have involved "an injury that occurred as part of the *care and treatment of the medical condition*." Doc. 97 at 6. But here, plaintiff's allegations about unwanted touching, rude comments, and drinking alcohol weren't part of defendants' diagnosis or treatment of plaintiff. As defendants argue, plaintiff hasn't identified any case where Kansas courts have found that "the type of allegations she claims—battery, assault and defamation—can form the basis for the common knowledge exception to apply and support a claim for medical malpractice." *Id.* at 5. On this summary judgment record, the court declines to expand Kansas's "narrow" common knowledge exception and apply it here because the Kansas courts have "rarely . . . applied" the exception in medical malpractice cases. *Hubbard*, 302 P.3d at 1093; *see also Munoz*, 199 P.3d at 1288 ("[T]he application of the common knowledge exception is extremely limited."). Thus, the court declines to expand the doctrine and apply the common knowledge exception to this case.

Instead, and as already discussed, the court concludes that Kansas law requires plaintiff to present expert testimony to meet the burden of proof on her Kansas medical malpractice

claim.  It's undisputed that plaintiff hasn't come forward with expert opinion to present at trial.
As a consequence, plaintiff's medical malpractice claim fails as a matter of law because she
lacks evidence to support an essential element of her claim.

## IV.    Conclusion

For reasons explained, the court grants summary judgment against plaintiff's intentional
infliction of emotional distress and medical malpractice claims.  As noted, plaintiff asserts a third
"claim" in the Pretrial Order for loss of consortium.  Doc. 93 at 11 (Pretrial Order ¶ 4.a.).
Defendants don't seek summary judgment against the loss of consortium "claim" specifically.
As our court has recognized, however, "[l]oss of consortium is not an independent cause of
action."  *Wood v. City of Topeka, Kan., Topeka Hous. Auth.*, 90 F. Supp. 2d 1173, 1196 (D. Kan.
2000), *amended on other grounds by* 96 F. Supp. 2d 1194 (D. Kan. 2000), *aff'd*, 17 F. App'x 765
(10th Cir. 2001).  "Damages based upon loss of consortium are recoverable only if the plaintiff
can prove an underlying cause of action."  *Id.*  Here, the court has granted summary judgment
against plaintiff's only two underlying claims that "would provide for loss of consortium
damages[.]"  *Id.*  Thus, the court also grants summary judgment against plaintiff's loss of
consortium "claim" as well because, without an underlying cause of action to support this
damages claim, it fails as a matter of law.

The court thus grants defendant's Motion for Summary Judgment.  Because the court has
concluded that each of plaintiff's three asserted claims fails as a matter of law, the court directs
the Clerk of the Court to enter Judgment for defendants and close this case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for
Summary Judgment (Doc. 94) is granted.  The court directs the Clerk of the Court to enter
Judgment for defendants and close this case.

**IT IS SO ORDERED.**

**Dated this 28th day of February, 2023, at Kansas City, Kansas.**

                                        s/ Daniel D. Crabtree
                                        Daniel D. Crabtree
                                        United States District Judge